## 10488

### BANK OF McCORMICK v. McCORMICK COUNTY *ET AL.*
(103 S. E. 787.)

Counties—Action May Be Maintained on Claim Audited Only by Special Organization Commission.—Under Civ. Code 1912, sec, 635, providing that in case a new county is formed it shall pay all costs and expenses of its creation, and Act February 19, 1916 (29 St. at Large, p. 729), sec. 21, providing that all actual expenses included in the formation of McCormick county created by that act should be an obligation of the county and creating a special commission authorizing it to borrow money in the name of the county, to pay the same, and pledge taxes to secure the sum borrowed, action may be maintained in the Court of Common Pleas to recover from the county a sum borrowed by the special commission which audited and approved the claim, regardless of whether it was audited by the county board of the county after creation.

Before Shipp, J., McCormick, Fall term, 1919. Reversed.

Action by the Bank of McCormick, S. C., against McCormick County, J. H. Lyon, as Supervisor, and W. H. Parks, as Treasurer. From order sustaining a demurrer by McCormick county, and dismissing the complaint as to it, the plaintiff appeals.

Order of Circuit Judge Sustaining Demurrer.—This is an action based on a note executed in the name of McCormick county, by the commissioners referred to in paragraph two and twenty-one of the act of 1916 establishing McCormick county. A demurrer was interposed to the complaint on the grounds that the Court of Common Pleas was without jurisdiction of the subject of the action and of the person of the defendant as said claim against McCormick county arose in contract.

Section 993, Code of Laws of South Carolina, reads as follows:

"Section 993. *Claims Against Counties—When Barred.* —"No claim against any county of this State shall be valid and payable unless the same be presented to and filed with the county board of commissioners of the said county during the fiscal year in which it is contracted or the next thereafter; and all claims not so presented and filed shall be barred; and no claim audited and allowed by the county board of commissioners or clerk of Court for fees of witnesses and jurors shall be paid by the county treasurer unless the same is presented to him for payment within five years from the date it is audited and allowed. This provision shall not affect the law now of force as to the bonded debt of any county."

It is clear that the "No Claim" mentioned in said section, means a claim arising in contract; but eminent counsel for the plaintiff contend that this section refers only to "ordinary county claims" and not to extraordinary county claims as in this case.

To give this section such construction it would be necessary to legislate into it words which are not there.

I fail to find in the statutes or in the decisions, any such claims as extraordinary claim against a county. In my view all claims arising in contract against a county are in the same class and there is no authority or necessity for classifying some as ordinary and some as extraordinary county claims.

It is conceded in this case that the claim of the Bank of McCormick against the County of McCormick arose in contract; and, therefore, it seems to me to be clearly within the purview of the statute above quoted.

Counsel for the plaintiff rely upon section 587, Code of Laws of South Carolina, as justifying an action in this Court on said claim.

That section does make each county a body politic and corporate with power to sue and be sued; however, this section must be considered in connection with section 993 above set out.

This question was first raised in the case of *Jennings v. Abbeville County,* 24 S. C. 543, in which it was held that "A county may be sued, but if upon a. county claim it must be done before the board of county commissioners by filing the claim for audit; for certain causes of action *ex delicto* the suit may be maintained in the Court of Common Pleas," and the Court, on page 549, further says: "The Court of Common Pleas is the general fountain of justice, and when the rights of a citizen, either derived from the common law or the statute, are invaded and the power to protect is conferred upon no special jurisdiction, he may seek redress in that Court." But where rights are created by statute to be obtained and protected in a special manner specified in the act and by a special tribunal, no other Court can assume jurisdiction. On the contrary, parties interested must pursue the course prescribed and must seek the aid of the tribunal upon which the power to grant or protect has been conferred, etc.

In the case of *Cunningham v. Clarendon County,* 81 S. C. 201, it was held that the Court of Common Pleas is without original jurisdiction of the suit against a county arising under contract. In the case of *Peoples Bank v. Greenville County,* 85 S. C. 297, it was held that the Court of Common Pleas has no original jurisdiction against a county in a suit on contract.

In the case of *DuPre v. Lexington County,* 90 S. C. 182, Chief Justice Jones, the organ of the Court, says:

"The provision of 806 of the Civil Code of 1902 (section 992, Code of Laws), providing for the auditing and payment by the county board. of commissioners of accounts for labor performed, fees, services, disbursements, or any other

matter is broad enough to cover a claim for injury to an automobile resulting from a defect in a highway, and to confer jurisdiction on the county board to act judicial in the matter."

An examination of the statute creating McCormick county will show that some of the duties of the commissioners referred to in paragraph 21 of said act, was to make a valid obligation of the county, raise money to refund expenses incurred by the petitioners in the formation of the county, and to borrow money in the name of the county therefor, and to pledge so much of the taxes for the year 1916, as was necessary for the payment of said expenses. The money was not paid out of the said taxes for 1916. So we inquire what is the present status of the note made by said commissioners. For the purposes of this argument, suppose we say it is a valid indebtedness against the county. If so, how should it be paid. This act does not provide that this note shall be paid in a manner different from other claims against the county; hence, if it is collectible at all, how could it be collected except by following sections 992 and 993 of the Code of Laws of South Carolina? A county can be sued in the manner only provided by the statute. The act creating McCormick county does not provide any new or different method for proceeding against McCormick county than that now of force under the general law. Now, therefore, the plaintiff must rely upon the general law for his remedy and redress. If he has none there, he has none at all. For the reasons above given, the demurrer to the jurisdiction of the Court is sustained and the complaint dismissed with cost. S. W. G. Shipp, Presiding Judge. December 2, 1919.

*Messrs. Bonham & Allen* and *Quattlebaum & Cochran,* for appellant, cite: *Suit was for money judgment, but also seeks to subject a specific fund to its payment, and is, therefore, a case in equity:* 69 S. C. 136; 69 S. C. 186; 108 S. C.

206; 99 S. C. 99; 43 S. C. 187; 66 S. C. 455.    *Debt author-ized by statute:* Sec. 635, 1 Civ. Code (29 Stats. 729). *County not exempted from suit:* Sec. 587, 1 Civ. Code. *Right to sue county may be authorized by statute generally, in respect to certain matters, or by a grant of right, from which right of suit may be inferred:* 15 C. J. 664; 24 Fed. 252; 133 U. S. 529; 33 L. Ed. 760; 97 U. S. 374; 24 L. Ed. 1060.    *Court of Common Pleas has jurisdiction:* Const. 1895, art. V, sec. 15; 2 S. C. 232; 24 S. C. 549; secs. 991, 993.    *1 Civ Code apply to legal, not equitable demands; and the two sections should be construed together:* 81 S. C. 429.    *Suit here distinguished from 24 S. C. 543, (ordinary county claim and based on Const. 1868):* 27 S. C. 421; 3 S. E. 788, (*action ex delicto*): 81 S. C. 201, (*purely legal demand*): 81 S. C. 419, (*no equitable features*): 84 S. C. 414, (*counterclaim setting up legal demand*): 85 S. C. 297, (*legal demand*): 90 S. C. 180), (*legal demand*).    *In other States, boards of county commissioners have no jurisdiction of claim of an equitable nature:* 70 Wash. 242; 41 L. R. A. (N. S.) 1066; 126 Pac. 622; Ann. Cas. 1914b, 721; 179 N. Y. 346; 62 N. E. 622; 28 Cyc. 1450.    *Counties are given right to borrow money and pledge taxes:* Sec. 1001, 1 Civ. Code 1912.

*Messrs. Sheppard Bros., Ross & Owens* and *J. Wm. Thurmond,* for respondent, cite: *No suit can be maintained against a county unless specifically authorized by law:* 24 S. C. 543.    *Court of Common Pleas without original jurisdiction of suits against counties:* Secs. 992, 993, 1 Civ. Code 1912; 81 S. C. 201; 90 S. C. 182.    *Suit is one at law, but result is same regardless of which side of the Court the case is on:* 83 S. C. 396; 67 S. C. 11; 30 S. C. 262.    *Failure c Judge to restrict dismissal of complaint to McCormick wa inadvertence:* 41 S. C. 355; 40 S. C. 408.

July 26, 1920.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an appeal from order of his Honor, Judge Shipp, sustaining a demurrer interposed by the county of McCormick to the jurisdiction of the Court on the ground that the Court of Common Pleas had no jurisdiction of the case against the county of McCormick.

His Honor dismissed the complaint, and plaintiff appealed, and by eight exceptions imputes error.

The complaint alleges in substance that Lyon is supervisor, and Parks the treasurer, of McCormick county, and a special commission was created for said county, with power to audit certain claims against the county, borrow money to pay the same, and to pledge so much of the taxes of McCormick county for the year 1916 as might be necessary.

The complaint also alleges that the commission audited and approved the claims referred to, borrowed a sum sufficient to pay the same from the appellant Bank of McCormick, and executed to the bank a note for the amount so borrowed, and pledged the taxes of 1916 to secure the note, and that the treasurer was in possession of sufficient sums of taxes of 1916 to pay the note, but the defendants refused to pay the same.

The exceptions must be sustained. The debt set forth in the complaint was fully authorized by statute.

Prior to the formation of the county, the general law of the State, Code of 1912, vol. I, sec. 635, provided in case a new county is formed it shall pay all costs and expenses of its creation. In the formation of the county certain costs and expenses were incurred.

The act establishing the county, Acts of 1916, sec. 21, p. 729, provided that all actual expenses incurred in the formation of the county were made an obligation and debt of the

county, and a special committee was created. This commission was authorized to borrow money in the name of the county, to pay the same, and pledge taxes of 1916 to secure the sum so borrowed. This commission had ample authority and plenary power to do what they did do. They were the ones to audit and approve the claims and borrow money necessary to pay the same. The debt, alleged in the complaint, is the liability of McCormick county, expressly authorized by the general law and act creating the county.

The special commission passed upon and approved the same, and appellant, in good faith, advanced the money to special commission to pay the same, and it would be a perversion of justice to allow claim of appellant to be defeated. The plaintiff pursued the remedy provided by law.

The county board of McCormick county, after it was created, had nothing to do with auditing and approving the claim. It was not a claim that they created, but was created under ample authority in the formation of the county, and before they were put in office, after the county was created. In this connection it may be well to call attention that when *Jennings v. Abbeville County,* 24 S. C. 549, was decided each county in the State had county commissioners. These county commissioners under the Constitution of 1868 were constitutional officers. Under the present Constitution the county supervisors are not constitutional officers; no two counties are governed actually the same way. The county government now is only expected to pay upon claims that they created and know something about.

The present county government of McCormick county did not create the claims sued on; they did not incur it, and are not expected to pass on it.

It was created, audited, fixed, and determined before they came into existence. The debt was created before they were elected. As to what was intended the board of county commissioners should pass upon and what is the jurisdic-

tion of claims against the counties, the recent opinion of Chief Justice Gary, filed June 28, 1920, in *Best v. Barnwell County*, 103 S. E. 479, fully discusses the same.

The judgment is reversed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE FRASER concur.

MR. JUSTICE GAGE.    I concur, and I also concur with what the Chief Justice has said.

MR. CHIEF JUSTICE GARY, *concurring.*    The only question raised by the appeal is whether there was error on the part of his Honor, the Circuit Judge, in sustaining a demurrer to the complaint, on the ground that the Court of Common Pleas did not have jurisdiction of the subject matter of the action.

When the case of *Jennings v. Abbeville County*, 24 S. C. 543, was decided in 1886, section 19, art. IV, Constitution of 1868, was of force, and it is as follows:

"The qualified electors of each county shall elect three persons for the term of two years, who shall constitute a board of county commissioners, which shall have jurisdiction over roads, highways, ferries, bridges, and in all matters relating to taxes, disbursements of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties: *Provided,* That in all cases there shall be right of appeal to the State Courts."

Section 19, art. IV, Constitution of 1868, was struck out by a constitutional amendment ratified in 1890 (Act December 20, 1890 [20 St. at Large, p. 649]), and there is no such provision in the Constitution of 1895.

The decision in *Jennings v. Abbeville County, supra,* was based entirely upon section 19, art. IV, Constitution of 1868. Therefore, the decision in that case is no longer authorita-

tive, and we are necessarily compelled to resort to the statutory law, in determining the powers conferred upon the board of county commissioners.

Section 587 of the Code of Laws 1912 is as follows:

"Each county is a body politic and corporate, for the following purposes: To sue and be sued; to purchase and hold, for the county, lands and personalty within the limits thereof; to make all contracts, and to do all acts in relation to the property and concerns of the county necessary thereto."

Section 991 provides that "No accounts shall be audited and ordered to be paid by the county board of commissioners, for any labor performed, fees, services, disbursements, or any other matter, unless it shall be made out in items, and accompanied with an affidavit attached thereto, and made by the person or officer presenting or claiming the same, that the said items are correct. * * * "

Section 993 is as follows:

"No claim against any county of this State shall be valid and payable unless the same be presented to and filed with the county commissioners of such county during the fiscal year in which it is contracted, or the next thereafter."

There are cases in which the jurisdiction of the board of county commissioners, and of the Court of Common Pleas, is concurrent; thus showing that the jurisdiction of the board of county commissioners is not exclusive. *DuPre v. Lexington County,* 90 S. C. 180, 73 S. E. 70. In that case this Court said:

"With respect to ordinary claims against the county, this Court has often held that the county board acts judicially in passing upon them, and that the only method of review is by appeal to the Circuit Court."

In the case of *Jennings v. Abbeville County, supra,* the Court used the words, "an ordinary *ex contractu* county claim," in discussing the jurisdiction of the county board.

The word "ordinary," as descriptive of the claims it had the power to adjust, was used advisedly; and, applying the maxim quoted by the Court in the Jennings case, "*Expressio unius est exclusio alterius*," the county board of commissioners has not jurisdiction of extraordinary claims, for the reason that it is not vested with the appropriate powers "to administer adequate relief in such cases." There is no question that the county board of commissioners is unable to grant the plaintiff the relief to which he is justly entitled.

We have shown that the plaintiff has a right; and, where that exists, he is entitled to a remedy. The Court of Common Pleas can grant the plaintiff adequate relief, as it has jurisdiction in all civil cases.

For these reasons, I concur in the opinion of Mr. Justice Watts.

MR. JUSTICE HYDRICK, *dissenting.* The sole question for decision arose upon the demurrer of the county to the jurisdiction of the Court. The discussion of the merits of plaintiff's claim and the liability of the county therefor is outside the issue before the Court.

It has been settled by repeated decisions of this Court, some of which are cited in the opinion of the Circuit Court, that no action can be brought against a county in the Court of Common Pleas, unless authority to bring it is given by statute. The reason assigned in all of the decisions is that the county is but a subdivision of the State, and one of its organized agencies for the purposes of government; and, therefore, it partakes of the immunity of the State from suit, except by its consent. It follows that a claim against a county is a claim against the State, in the sense that claims against the State can be prosecuted only by consent of, and in the manner prescribed by, the State.

The Constitution (article XVII, section 2) provides that the General Assembly may direct by law in what manner claims against the State may be established and adjusted.

The legislature has provided that all claims against a county (except certain actions for damages for tort which, by the authority of special statutes, may be brought in the Court of Common pleas) must be presented to the county board of commissioners, from whose decision an appeal may be taken to the. Court of Common Pleas, and hence to this Court. Nothing can be clearer, upon reason and authority, that the remedy so provided is exclusive. Because, if the State, and the county as a part thereof, is exempt from suit, except by consent of the State, the consent may be given upon such terms and conditions as the legislature may see fit. It has seen fit to say that all claims against a county arising out of contract must be presented to and passed upon by the county board of commissioners.

The very point in issue was decided by this Court, contrary to the contention of appellant, in the case of *Jennings v. Abbeville County,* 24 S. C. 543, and the principles upon which that decision was rested have been followed by this Court in subsequent decisions too numerous to mention. The law has been settled, and settled right, and it is now well understood by the profession. It ought not, at this late day, to be unsettled to· prevent what may appear to be a hardship in a particular case, on account of the plaintiff's failure to present its claim to the proper tribunal within the time prescribed by the statute, and appeal from its decision, if it had been adverse to its contention.

The fact that, when *Jennings v. Abbeville County* was decided, the county board of commissioners was composed of constitutional officers and that the boards are now composed of statutory officers, can make no difference. The principles above stated upon which all of our decisions have been rested lead to the same conclusion, whether the boards are composed of constitutional or statutory officers; and, in fact, most of our decisions upon that point have been rendered since the change in the Constitution.

As the legislature alone can authorize a suit against a county and has authority to direct the manner in which claims against a county, as a part of the State, may be established and adjusted, it follows that it may provide the tribunal before which it must be done and make its jurisdiction exclusive, and that is what it has done.

For the foregoing reasons, I dissent from the opinion of Mr. Justice Watts and concur in that of the Circuit Judge, except that part of it which says that, if plaintiff has no remedy under the general law, it has none at all. That remark was unnecessary to the decision of the single question before the Court, to wit: Has the Court of Common Pleas original jurisdiction of this action? Having answered that question in the negative, and, as I think, correctly, there was no occasion to say more. The opinion of the Circuit Judge will be reported. For the reasons hereinbefore stated as well as for the reasons therein stated, I think the judgment should be affirmed.